UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CANDY MCALLISTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Case No. 3:12-cv-0078 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| QUALITY MOBILE X-RAY SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is Defendant Quality Mobile X-Ray Services, Inc.'s Motion for Partial Dismissal (Docket No. 8), to which the plaintiff has responded (Docket No. 10), and the defendant has filed a reply (Docket No. 13). For the reasons discussed herein, the defendant's motion will be granted.

## BACKGROUND

This suit involves federal wage and hour, labor and employment, and state law claims. The plaintiff, Candy McAllister, previously worked as a mobile ultrasound technician for the defendant, Quality Mobile X-Ray Services, Inc. ("Quality Mobile"), a Tennessee corporation.[1] She alleges that, during the course of her employment, Quality Mobile failed to compensate her for all of the hours she actually worked, failed to provide her with any information concerning

---

[1] Unless otherwise noted, the allegations are drawn from the plaintiff's Amended Complaint (Docket No. 7).

1

her FMLA rights after she notified her supervisor of her pregnancy, and terminated her on account of her sex and in retaliation for exercising her FMLA rights.

The plaintiff's wage and hour claims center on Quality Mobile's efforts to discourage the plaintiff from reporting any time that she worked in excess of a 40-hour workweek. According to the plaintiff, Quality Mobile automatically deducted 30 minutes each day the plaintiff worked for lunch, regardless of whether the plaintiff was actually able to take a lunch-break due to the demands of her position. Although it allegedly ceased its auto-deduct policy in December 2010, Quality Mobile nonetheless required the plaintiff to report the 30 minute lunch-break on her time sheet, again, irrespective of whether she was actually able to take such a break. The plaintiff also alleges that, due to the demands of her position, she was forced to perform uncompensated work "off the clock" to complete her job-related tasks. For instance, she alleges that she regularly completed paperwork at home.

The plaintiff's discrimination and retaliation claims originate from her notification to Quality Mobile that she was pregnant and planned to take leave in March 2011. The plaintiff gave this notice to her supervisor, Rachel McAnally in October 2010. Although the plaintiff claims that she was eligible to receive FMLA leave, she alleges that Quality Mobile never provided her with information concerning her FMLA rights after she notified Ms. McAnally of her anticipated maternity leave. Later, on January 17, 2011, Quality Mobile terminated the plaintiff, ostensibly because it did not believe that she was happy enough in her current employment. According to the plaintiff, Quality Mobile had never shared this belief with her prior to her pregnancy. The plaintiff alleges that Quality Mobile nonetheless recognized that she

was a diligent worker and showed an excellent understanding of various types of medical equipment utilized during the course of her employment.

The plaintiff commenced this action on January 17, 2012. (Docket No. 1.) On March 12, 2012, she filed an Amended Complaint. (Docket No. 7.) She alleges claims under: (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, for wage and overtime violations; (2) the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, for interference and retaliation; (3) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.*, for sex discrimination; and (4) Tennessee common law and the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304, for retaliatory discharge.[2] (*Id.*) Quality Mobile subsequently filed the present motion on March 16, 2012. (Docket No. 8.)

## ANALYSIS

Quality Mobile has moved for partial dismissal of the plaintiff's Amended Complaint on the ground that it fails to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.     Standard of Review**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The

---

[2] While the plaintiff captions her common law claim as one for wrongful discharge, it is evident that the plaintiff is actually asserting a claim for common law retaliatory discharge.

3

Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## II. The Defendant's Motion

Quality Mobile contends that two of the six causes of action asserted in the plaintiff's Amended Complaint must be dismissed under Rule 12(b)(6). First, it contends that the plaintiff's TPPA claim cannot stand because the plaintiff has failed to allege that she refused to participate or remain silent about an illegal activity. (Docket No. 8, at 2.) Next, it contends that the plaintiff's common law retaliatory discharge claim must also be dismissed because it is preempted by the FMLA and the THRA. (*Id.*) The court will address each of Quality Mobile's contentions in turn.

### A. TPPA Claim

The plaintiff alleges that Quality Mobile violated the TPPA, also known as the Whistleblower Act, when it terminated her for exercising her FMLA rights and as a result of her pregnancy. (Docket No. 7, at 6.) The TPPA provides that:

> (b) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.
>
> ....
>
> (d)(1) Any employee terminated in violation of subsection (b) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

Tenn. Code Ann. § 50-1-304 (2011). A plaintiff must satisfy the following four elements in order to prevail on a retaliatory discharge claim asserted under the TPPA:

> (1) the plaintiff was an employee of the defendant;
> (2) the plaintiff refused to participate in or remain silent about illegal activity;
> (3) the defendant employer discharged or terminated the plaintiff's employment; and
> (4) the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 437 (Tenn. 2011).

Again, in its motion to dismiss, Quality Mobile argues that the plaintiff's TPPA claim is not actionable because she refused to participate in or remain silent about an illegal activity. (Docket No. 8, at 2.) Indeed, it adds that the plaintiff has failed to allege the existence of any illegal activity at all. (*Id.*) In her opposition, the plaintiff counters that she did sufficiently allege an illegal activity, that is, "she alleged [that] she was terminated in violation of the FMLA and due to her pregnancy." (Docket No. 10, at 9.) However, this argument misses the mark.

5

In order for a TPPA retaliatory discharge claim to be actionable, the plaintiff must allege that she refused to participate in or remain silent about an illegal activity and that she was subsequently terminated or discharged by her employer solely for that refusal. *Webb*, 346 S.W.3d at 437. As noted above, the alleged illegal activity here is the plaintiff's termination itself. Aside from her termination, the plaintiff has not alleged that Quality Mobile engaged in any other illegal activity. Thus, the plaintiff's TPPA claim proceeds as follows: (1) the plaintiff, an employee of the defendant, Quality Mobile; (2) refused to participate in or remain silent about her own termination in violation of the FMLA and due to her pregnancy; (3) Quality Mobile subsequently terminated the plaintiff's employment; and (4) it did so solely because the plaintiff refused to participate in or remain silent about her own termination in violation of the FMLA and due to her pregnancy. As Quality Mobile correctly points out in its reply brief, this theory of liability defies logic. (Docket No. 13, at 5.)

It is evident that the plaintiff is essentially arguing that the factual allegations underlying her claims for FMLA retaliation and employment discrimination under Title VII and the THRA also support a TPPA cause of action. However, the TPPA, as evidenced by its express terms, protects whistleblowers, that is, those individuals who refuse to participate in or remain silent about an illegal activity. Having reviewed the Amended Complaint and its factual allegations in the light most favorable to the plaintiff, the court finds that it lacks any allegation of whistleblowing activity. Accordingly, the plaintiff's TPPA claim will be dismissed.

The plaintiff contends that, to the extent that she fails to state a TPPA retaliatory discharge claim, she should nonetheless be granted leave to file a second Amended Complaint because any amendment would not prejudice Quality Mobile at this early stage of the

6

proceedings. (Docket No. 10, at 10.) The plaintiff sought this relief in her opposition to the Motion to Dismiss and has not filed a formal motion to amend attaching her proposed second Amended Complaint as an exhibit. Nor has the plaintiff otherwise explained in her opposition brief how she specifically plans to further amend her Amended Complaint. Even setting these deficiencies aside, the plaintiff makes clear in her opposition brief that the illegal activity forming the basis of her TPPA claim is her termination by the defendant in violation of the FMLA, Title VII, and the THRA. Indeed, the plaintiff fails to otherwise allege that Quality Mobile engaged in any other type of illegal activity. The court thus fails to see how any further alterations to the plaintiff's Amended Complaint would fundamentally change the nature of her TPPA claim such that it would survive a Rule 12(b)(6) motion to dismiss. *See Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) ("A motion for leave to amend may be denied for futility if the court concludes that the pleading as amended could not withstand a motion to dismiss") (internal quotation marks omitted). Accordingly, for all of these reasons, the court will not grant the plaintiff leave to amend her Amended Complaint.

**B. Common Law Retaliatory Discharge Claim**

The plaintiff has also asserted a common law retaliatory discharge claim against Quality Mobile. (Docket No. 7, at 6.) She specifically alleges that Quality Mobile terminated her for exercising her FMLA rights and also as a result of her pregnancy. The defendant argues that this claim must be dismissed because it is preempted by the FMLA and the THRA. (Docket No. 9, at 6.) The court will address Quality Mobile's preemption argument as it relates to each statute separately.

**1) FMLA Preemption**

Again, Quality Mobile contends that, to the extent that the plaintiff's common law retaliatory discharge claim is premised on a violation of the FMLA, it is preempted by the federal statute. (Docket No. 9, at 6.) It cites *Underland-Williams v. GutterGuard, LLC*, No. 3:11-0832, 2011 WL 6148672, at *4, (M.D. Tenn. Dec. 9, 2011), a recent case from this district, as support for its argument. The court in *Underland-Williams* dismissed a common law retaliatory discharge claim, observing that "[t]his Circuit has concluded that the FMLA preempts common law claims for retaliatory discharge." 2011 WL 6148672, at *2. To support this proposition, the court cited *Morris v. Family Dollar Stores of Ohio*, 320 F.App'x 330, 341 n.12 (6th Cir. 2009) and *Doricott v. Fairhill Ctr. for Aging*, 2 F.Supp.2d 982, 993 (N.D. Ohio 1998). Respectfully, the court does not interpret either of these cases to stand for such a broad proposition.³ Nevertheless, the court agrees that, to the extent that the plaintiff's retaliatory discharge claim is based on a violation of the FMLA, it is preempted.

---

³ For instance, in *Morris*, the Sixth Circuit simply noted that the plaintiff in that case recognized that the policy embedded in the FMLA could not serve as the basis for his wrongful discharge claim under applicable Ohio state law precedent. *Morris*, 320 F.App'x at 341, n.12. Specifically, the Court of Appeals noted that, in *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 773 N.E.2d 526 (2002), the Ohio Supreme Court concluded that a state law wrongful discharge claim premised on a violation of the FMLA is not actionable because "the statutory remedies in the FMLA adequately protect the public policy embedded in the [FMLA]." *Id.* (quoting *Wiles*, 773 N.E.2d at 535). Similarly, *Doricott* involved a wrongful discharge claim brought under Ohio law and concluded that such a claim is not actionable when a plaintiff is provided relief through other remedial schemes. *Doricott*, 2 F.Supp.2d at 993. In reaching its conclusion, the district court relied on Ohio district court decisions and opinions of the Ohio Supreme Court. *Id.* at 992-93. As is evident from the aforementioned discussion, neither of theses cases supports the broad proposition that, in this Circuit, common law claims for retaliatory discharge are preempted by the FMLA.

Neither party has otherwise cited any controlling authority from this circuit addressing this precise issue. Moreover, the court's own research has failed to yield any such authority or any persuasive authority from other *circuit courts of appeal* concerning the FMLA preemption issue.

The tort of retaliatory discharge constitutes an exception to the well-established doctrine of employment at will. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534-35 (Tenn. 2002). To a state a claim for common law retaliatory discharge, a plaintiff must allege the following four elements:

> (1) that an employment-at-will relationship existed;
> (2) that the employee was discharged;
> (3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and
> (4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.

*Webb*, 346 S.W.3d 422, 437-38.

The Tennessee Supreme Court first recognized the existence of a common law retaliatory discharge action in *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 445 (Tenn. 1984). In that case, an employee was allegedly terminated by her employer for exercising her rights under Tennessee's Workers' Compensation Law. *Id.* at 442. In creating the cause of action, the court found that retaliatory discharges completely circumvented the legislative scheme contained in the Workers' Compensation Law. *Id.* at 444. It added that "[s]uch discharges will have the effect of relieving the employer of its duty to compensate and the employee of his or her right to compensation." *Id.* Therefore, the court found it necessary to create a common law cause of action for retaliatory discharge "to enforce the duty of the employer, to secure the rights of the employee, and to carry out the intention of the legislature." *Id.* at 445. While the Tennessee Supreme Court has subsequently made clear that retaliatory discharge actions are not limited to discharges arising from an employee's exercise of workers' compensation rights, it has also

9

recognized that a central purpose of the action is "to prevent employers from circumventing their statutory obligations." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1992).

However, in the instant case, there is no threat that the employer (Quality Mobile) will circumvent its FMLA obligations, because the FMLA itself creates a cause of action for retaliation and provides a detailed remedial scheme to obtain redress for statutory violations. Indeed, FMLA remedies include compensatory damages, interest, liquidated damages, reasonable attorney's and expert witness fees and costs, and other equitable relief such as employment, reinstatement, and promotion. *See* 29 U.S.C. § 2617(a). Given the existence of this comprehensive remedial scheme to redress violations of statutory rights, there is no need to extend the common law retaliatory discharge tort to overlap with the FMLA. *See Handel v. Belvedere USA Corp.*, No. 00 C 50420, 2001 WL 1286842, at * 4 (N.D. Ill. Oct. 22, 2001) (noting that, because the FMLA prohibits retaliation and provides remedies for violations, there was "no reason for expanding the tort [of retaliatory discharge] to overlap with the FMLA.").

More importantly, to extend the tort in such a manner would frustrate the remedial scheme Congress specifically created in the FMLA. In her retaliatory discharge claim, the plaintiff seeks, among other things, emotional distress and punitive damages (Docket No. 7, at 6, 8.), remedies that are unavailable under the FMLA. *Sturza v. Loadmaster Eng'g., Inc.*, No. H-07-2500, 2008 WL 1967102, at *3 (S.D. Tex. May 1, 2008) (collecting cases); *see also Cavin v. Honda of Am. Mfg. Inc.*, 138 F.Supp.2d 987, 992 (same). Indeed, a majority of courts have held that the menu of remedies contained in the FMLA is exclusive. *See Hayduk v. City of Johnstown*, 580 F.Supp.2d 429, 485-86 (W.D. Pa. 2008) (stating in a case involving intersection of FMLA and 42 U.S.C. § 1983 claims that "almost every decision of which this Court is aware

has held . . . that the FMLA provides the exclusive means of recovery for [the] violation of rights created by the FMLA" and collecting cases); *See also Alvarez v. Hi-Temp, Inc.*, No. 03 C 2610, 2004 WL 603489, at *5 (N.D. Ill. Mar. 24, 2004) ("[N]umerous courts have found that Congress intended the 'specific remedies set forth in § 2617 [to] be the exclusive remedies available for a violation of the FMLA'") (quoting *O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F.Supp.2d 868, 895 (S.D. Ohio 1998). *But see Knussman v. Maryland*, 16 F.Supp.2d 601, 610 (D.Md. 1998) (finding that remedies contained in the FMLA were not exclusive and permitting a § 1983 claim premised on a violation of the FMLA).

However, if the plaintiff was allowed to bring a retaliatory discharge claim premised on a violation of the FMLA and prevailed, she could potentially circumvent the exclusive set of remedies Congress created by recovering damages that the statute does not otherwise permit. *See Sturza*, 2008 WL 1967102, at *3 (noting that making emotional distress and punitive damages available through a tort action to redress an FMLA violation would circumvent the specific remedies provided in the FMLA and citing cases reaching the same conclusion); *Alvarez*, 2004 WL 603489, at *4 (allowing a plaintiff to recover emotional distress and punitive damages "through a tort claim to rectify an FMLA violation when such remedies are precluded under the FMLA would circumvent the remedial scheme Congress devised to accomplish the FMLA's objective"); *Handel*, 2001 WL 1286842, at *4 ("Moreover, if the courts were to recognize a retaliatory discharge claim based on the FMLA, a plaintiff would then be able to circumvent the enforcement scheme and remedial structure Congress specifically set forth in the FMLA."); *Cavin*, 138 F.Supp.2d at 998 (noting that if the plaintiff were able to bring a retaliatory discharge tort claim premised on a violation of the FMLA, he would circumvent the

enforcement scheme and remedial structure specifically set forth by Congress in the statute). Thus, to the extent that the plaintiff's retaliatory discharge claim is based on a violation of the FMLA, that claim is preempted. Indeed, to allow such a claim to proceed would frustrate "the accomplishment and execution of the full purposes and objectives of Congress." *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (recognizing that conflict preemption occurs "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress") (internal quotation marks and citations omitted); *see also Alvarez*, 2004 WL 603489, at *5 (citing *Gade* and concluding that negligent supervision claim based on an FMLA violation is barred under the doctrine of conflict preemption).

The plaintiff contends that a provision in the FMLA's savings clause precludes a finding of preemption. (Docket No.10, at 5-6.) That provision specifically states that "[n]othing in this Act or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act or any amendment made by this Act." 29 U.S.C. § 2651(b). It is true that this express language plainly indicates that Congress did not intend to completely occupy the field of family and medical leave rights. However, the court's conclusion that the plaintiff's common law retaliatory discharge claim premised on an FMLA violation is preempted is rooted in the doctrine of conflict preemption, not field preemption. *See Gade*, 505 U.S. at 98 (noting the differences between the two doctrines and explaining that field preemption exists "where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it") (internal quotation marks and citations omitted). That is, the court's holding is based on the fact that permitting a retaliatory discharge tort claim

premised on an FMLA violation to proceed could potentially circumvent the comprehensive remedial scheme Congress established in the FMLA and thereby frustrate the achievement and execution of Congress' purposes and objectives in creating those exclusive avenues of relief. *See id*. Moreover, while the savings clause expressly allows states to provide greater family and medical leave *rights* than the FMLA, it does not mean that Congress also intended to allow states to provide additional *remedies* for FMLA violations. *Desrochers v. Hilton Hotels Corp.*, 28 F.Supp.2d 693, 695 n.1 (D. Mass. 1998); *see also Alvarez*, 2004 WL 603489, at *4. Again, a majority of courts have held that the remedies contained in the FMLA are exclusive. *See Hayduk*, 580 F.Supp.2d at 485-86; *See also Alvarez* 2004 WL 603489, at *5.

Moreover, the plaintiff's reliance on the Tennessee Supreme Court's decision in *Guy* to argue that the FMLA does not preempt her retaliatory discharge claim is misplaced. First, *Guy* did not even address the intersection of an FMLA retaliation claim and a common law retaliatory discharge claim based on the same conduct. Instead, it involved an employee's claim that he was discharged in retaliation for reporting an insurance agent's fraud to the Tennessee Department of Commerce and Insurance. *Guy*, 79 S.W.3d 528, 531-33. Even more importantly, *Guy* applied Tennessee state precedent to analyze whether the TPPA, a state statute, preempted the common law tort of retaliatory discharge. *Id.* at 534-37. Thus, *Guy* is inapposite to the issue presently before the court, which, broadly speaking, is whether an Act of Congress preempts a state law tort claim based on a violation of that Act.

Accordingly, for all of the foregoing reasons, the court will dismiss the plaintiff's common law retaliatory discharge claim based on a violation of the FMLA.

**2)      THRA Preemption**

The plaintiff's common law retaliatory discharge claim is also premised on Quality Mobile's alleged decision to terminate the plaintiff on account of her pregnancy. (Docket No. 7, at 6.) This allegation similarly underlies the plaintiff's THRA and Title VII claims for sex discrimination. (*Id.* at 6-7.) Quality Mobile thus argues that, because the plaintiff's retaliatory discharge claim is based on a violation of the THRA, it is preempted by that statute. (Docket No. 9, at 6-7.) The court agrees.

In *England v. Fleetguard, Inc.*, 878 F.Supp. 1058, 1064-65 (M.D. Tenn. 1995), a court from this district relied on clear guidance from the Tennessee Supreme Court to conclude that the remedies contained in the THRA were exclusive and therefore foreclosed the plaintiff from amending his complaint to add a retaliatory discharge claim premised on the same allegations of religious discrimination underlying his THRA cause of action. The *England* court specifically relied on the following statement in the Tennessee Supreme Court's decision in *Hodges*:

> Resolution of this matter necessitates an examination of the state of the law on retaliatory discharge at the time the statute was enacted. This is so because if a statute creates a new right and prescribes a remedy for its enforcement, then the prescribed remedy is exclusive. However, where a common-law right exists, and a statutory remedy is subsequently created, the statutory remedy is cumulative unless expressly stated otherwise. Furthermore, the Legislature is presumed to know the state of the law on the subject under consideration at the time it enacts legislation.

*England*, 878 F.Supp.2d at 1064 (quoting *Hodges*, 833 S.W.2d 896, 898-99). Applying these principles, the *England* court observed that the THRA, a statute creating new rights and prescribing remedies for their enforcement, was enacted in 1978, while the common law tort of retaliatory discharge was first recognized by the Tennessee Supreme Court in 1984. *Id.* at 1064-65. Therefore, because the THRA was enacted before the common law tort was created, the

14

*England* court concluded that the remedies contained in the Act were exclusive. *Id.* The state law principles upon which the *England* court relied have not changed. *See Guy*, 79 S.W.3d at 536. Indeed, the *England* court's analysis has been utilized in two recent Tennessee federal court decisions concluding that the THRA preempted common law retaliatory discharge claims based on violations of the Act. *See Underland-Williams*, 2011 WL 6148672, at *4; and *Fonseca v. Golden Living Ctr. - Mountainview*, No. 4:09-cv-93, 2010 WL 3155984, at *9 (E.D. Tenn. Aug. 10, 2010).

The plaintiff's attempt to argue against THRA preemption is unavailing. Indeed, both of the cases cited by the plaintiff in support of her argument that the THRA does not preempt a common law retaliatory discharge claim that is based on a violation of the Act are inapposite. First, *Werlein v. Brink's Home Sec., Inc.*, No. 3:04-0911, 2005 WL 3417308, at *2, 7 (M.D. Tenn. Dec. 13, 2005), is factually distinguishable, since unlike this case, the plaintiff there did not bring claims for gender discrimination, but was instead a whistleblower who alleged that his employer discharged him in retaliation for reporting sexual harassment suffered by another employee. In addition, *Emerson v. Oak Ridge Research, Inc.*, 187 S.W.3d 364, 377 (Tenn. Ct. App. 2005) does not even address the issue of THRA preemption of common law retaliatory discharge claims.

The plaintiff's common law retaliatory discharge claim will therefore be dismissed.

## CONCLUSION

For all of the reasons discussed herein, the Defendant Quality Mobile X-Ray Services, Inc.'s Motion for Partial Dismissal (Docket No. 8) is **GRANTED**.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge